# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

RUSSELL E. CASTON,

       Plaintiff,

-V-

THOMAS E. HOAGLIN, *et al.,*

       Defendants.

Case No. 2:08-cv-200
JUDGE SMITH
Magistrate Judge King

## OPINION & ORDER

Plaintiff Russell E. Caston, a shareholder of Huntington Bancshares, Incorporated

("Huntington"), brings this shareholder derivative action against Defendants Thomas E. Hoaglin,

Donald R. Kimble, Marty E. Adams, David P. Lauer, Kathleen H. Ransier, Michael J. Endres,

Raymond J. Biggs, Don M. Casto, III, John B. Gerlach, Jr., William J. Lhota, Gene E. Little,

David L. Porteous, D. James Hilliker, Jonathan A. Levy, Marylouise Fennell, Gerard P.

Mastroianni, and Huntington ("Defendants"), under Maryland common law for breach of

fiduciary duties, abuse of control, gross mismanagement, and waste of corporate assets.

Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 23.1 (Doc.

54). Plaintiff filed a sealed memorandum in opposition to Defendants' motion to dismiss (Doc.

58). Defendants filed a reply in support of their motion to dismiss (Doc. 62). Plaintiff then asked

for leave to file a sur-reply (Doc. 63), which the Court granted (Doc. 66). Defendants then filed a

response to Plaintiff's motion for leave to file sur-reply (Doc. 64). On March 10, 2009, Plaintiff

filed a sur-reply (Doc. 67). Defendants, having already responded to the merits of the sur-reply in their motion against it, did not respond.

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000 and complete diversity exists between Plaintiff, who is from Oklahoma, and Defendants, who are from Ohio and Maryland. Venue is proper because Huntington is headquartered in the district. The parties agree that Maryland law applies to the matter. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (finding that federal courts must apply state substantive law).

For the reasons that follow, the Court **GRANTS** Defendants' motion to dismiss. (Doc. 54).

## I. FACTUAL BACKGROUND

Plaintiff Russell E. Caston is a minority shareholder of Huntingon Bancshares, Incorporated ("Huntington").

Defendant Hoaglin is Huntington's President and Chief Executive Officer and the Chairman of Huntington's Board of Directors ("Board"). Defendants Biggs, Casto, Endres, Fennell, Gerlach, Hilliker, Lauer, Levy, Lhota, Little, Mastroianni, Porteous, and Ransier comprise the remaining members of the Board. Defendant Huntington is a multi-state diversified financial holding company. It serves as the holding company for The Huntington National Bank and provides financial products and services across the country through its regional banking offices and subsidiaries. (Compl. ¶¶ 5-6).

At a May 30, 2007 shareholders' meeting, Defendant Hoaglin announced that an acquisition of Sky Financial would result in significant earnings accretion in 2008. (Compl. ¶ 9).

As a result of this and other positive statements, Huntington's shareholders approved an acquisition of Sky Financial. (Compl. ¶ 9). On July 1, 2007, the Board unanimously approved the acquisition for $3.3 billion, and Huntington announced the acquisition in a December 20, 2007 press release. (Compl. ¶ 6). Plaintiff alleges that upon completion of the merger, Defendant Hoaglin again stated that the merger would be accretive to Huntington's earnings. (Compl. ¶ 9).

In acquiring Sky Financial, Huntington also acquired a 17-year lending relationship between Sky Financial and Franklin, which included a $1.8 billion debt in the form of high-risk residential mortgage loans. (Compl. ¶¶ 6, 10). At the time of acquisition, Franklin had become a nationally recognized buyer of portfolios of residential mortgage loans, both first and second-lien loans, and real estate assets from a variety of United States financial institutions, including mortgage banks. Franklin specialized in subprime, second lien, and scratch and dent mortgages.[1] Before the acquisition, Franklin conducted its loan origination business through its wholly-owned subsidiary, Tribeca Lending Corp. (Compl. ¶ 7).

Plaintiff alleges that, as Sky Financial's successor in interest, Huntington acquired this $1.8 billion debt knowing, but not disclosing, that it: (1) did not have the ability to adequately stress test or value these high-risk mortgage products, (2) had previously decided not to acquire similar high-risk derivative loan products because it had been cautioned by regulators and its own trade desk of the toxic nature of these products, and (3) knew that its due diligence of these toxic mortgage loan products was inadequate. (Compl. ¶ 9).

---

[1] Franklin originated and serviced primarily high-risk subprime residential mortgage loans to individuals with serious financial difficulties and whose documentation, credit histories, income, and other factors caused them to be classified as subprime borrowers, to whom conventional mortgage lenders often did not make loans. (Compl. ¶ 7).

When the secondary market for subprime mortgages evaporated, these loans became toxic to Huntington. (Compl. ¶ 7). On November 16, 2007, less than five months after the acquisition closed, Huntington "shocked its investors" when it reported disastrous 2007 fourth-quarter results and an anticipated charge of $300 million in order to "build the allowance for loan and lease losses in support of the Financial relationship." (Compl. ¶ 11). Huntington revealed at that time that all $1.8 billion in loans to Franklin were being reassessed to more adequately determine their prospect of collectability. (Compl. ¶ 11). On January 3, 2008, Huntington reported a restructuring of its existing lending relationship with Franklin, under which Huntington entered into a forbearance agreement with Franklin that would mature on May 15, 2009, resulting in a $300 million debt reduction to Franklin and a $1.2 billion increase in non-performing assets, representing Huntington's remaining loan to Franklin. (Compl. ¶ 11).

Following release of the restructuring deal, Huntington's per-share price dropped from a closing price of $14.08 on January 3, 2008 to a closing price of $13.52, continuing to decline to a low closing price of $10.66 per share on January 18, 2008. (Compl. ¶ 13).

On February 29, 2008, Plaintiff filed a complaint in the instant action (Doc. 2). Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 23.1 on May 2, 2008 (Doc. 23). In response, Plaintiff filed an amended complaint on September 12, 2008 (Doc. 45). In the amended complaint, Plaintiff alleges that between June 2006 and September 2008: (1) Defendants knowingly concealed material adverse facts regarding undisclosed mortgage-related losses which resulted from Huntington's acquisition of Sky Financial, including the amount of potentially uncollectible mortgage-related debt of Franklin; (2) Huntington lacked adequate internal and financial controls; (3) Huntington knowingly acquired and continued to hold high-risk financial

instruments that Defendants knew could not be adequately valued or evaluated and which Defendants knew were a rapidly wasting asset; and (4) Defendants caused Huntington to issue false statements concerning its financial statements and future business prospects. (Compl. ¶ 14).

On November 10, 2008, Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 23.1, arguing that Plaintiff failed to make a required pre-suit demand upon the Board or demonstrate demand futility with particularity. (Doc. 54). This motion has been fully briefed and is ripe for review.

For the reasons set forth in the Discussion Section, the Court finds that Defendants' motion to dismiss is meritorious.

## II.    RULE 23.1 AND MARYLAND'S DEMAND REQUIREMENT

Federal Rule of Civil Procedure 23.1 requires that a plaintiff in a shareholder derivative suit "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors . . . and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1. Rule 23.1 governs only the adequacy of the shareholder's pleadings and does not create a requirement that a shareholder make an effort to obtain the desired action from directors. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991).

Historically, the derivative lawsuit allowed an individual shareholder to enforce a corporate cause of action against those running the corporation. *Ross v. Bernhard*, 396 U.S. 531, 534 (1970). The purpose of the derivative action was to provide the individual shareholder with the means to protect company interests from "faithless directors and managers." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949). In order for a shareholder to usurp the

corporation's power to control litigation, he must: (1) make a demand on the board to bring litigation, or (2) plead with particularity that a demand is futile. *Id.* at 619-620. These safeguards were intended to prevent abuse of the derivative remedy. *Ross*, 396 U.S. at 534. Ordinarily, it is only when demand is excused that the shareholder enjoys the right to initiate a derivative suit "in disregard of the directors' wishes." *Kamen*, 500 U.S. at 96.

When a shareholder brings a derivative suit under federal law, courts must apply the substantive law of the defendant corporation's incorporation state to determine whether the failure to make a demand is excused. *Id.* at 97. Huntington is incorporated in Maryland, and thus, Maryland law applies. *See id.* Under Maryland law, the power to bring and maintain litigation belongs to the corporation's board of directors. *Werbowsky v. Collomb*, 766 A.2d 123, 142 (Md. 2001). In order to seize this power, a shareholder must demonstrate the futility of a demand by pleading sufficient facts, which, if true, would demonstrate that:

> (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule. *Id.* at 620.

## III. DISCUSSION

Defendants argue that they are entitled to dismissal in their favor on Plaintiff's state common-law claims because Plaintiff has failed to plead with particularity why he failed to make a demand upon the Board before filing suit. (Defs.' Mot. to Dis. at 3). Plaintiff counters that under Maryland law, he is not required to make a demand under the futility exception. (Pl.'s Memo. in Opp. at 10).

After examination of Plaintiff's claim, the Court finds that Plaintiff has not met his burden of pleading either prong of Maryland's disjunctive, two-prong demand-futility test.

**A.      Plaintiff Failed to Plead with Particularity That Making a Demand Would Have Caused Irreparable Harm to Huntington.**

The Court finds that Plaintiff has failed to meet the first prong of the demand-futility exception.

As set forth above, in order to meet the first prong, a shareholder must plead with particularity that "a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation." *Werbowsky*, 766 A.2d at 620.

Plaintiff alleges that delay in litigation "would undoubtedly inflict further harm" and that Defendants have already caused irreparable harm in the form of financial loss and securities litigation due to the alleged wrongdoings and loss to the company's "reputation and corporate image." (Pl.'s Mot. in Opp. at 10-11). Plaintiff further alleges that reputational loss has caused Huntington to suffer from a "liar's discount, a term applied to stocks of companies who have misled the investing public," which in turn, will affect Huntington's future ability to raise capital. *Id.*   Plaintiff does not explain how the making of a demand or the delay caused by awaiting a response to a demand might have caused irreparable harm.

Defendant counters that Plaintiff filed his action more than 10 months ago, has not pursued injunctive relief, and waited months after Defendants moved to dismiss his original complaint before filing an amended complaint, during which time Huntington's Board could have considered his demand. (Defs.' Rep. at 4). Defendants then rely on *Sekuk Global Enters. Profit Sharing Plan v. Kevinides*, No. 24-C-03-007496, 24-C-03007876, 24-C-03-008010, 2004 WL

1982508, at *3 (Md. Cir. Ct. May 25, 2004), for the proposition that Plaintiff cannot create his own irreparable harm by causing delay in the litigation.

Courts applying Maryland law have not defined "irreparable harm" in the context of shareholder derivative litigation. But in evaluating requests for injunctive relief, which also require a showing of "irreparable harm" caused by delay in awaiting a response, the Maryland Court of Appeals has determined that irreparable harm exists when a plaintiff pleads that "substantive and positive injury" and "monetary damages are difficult to ascertain or are otherwise inadequate." *Chestnut Real Estate P'ship v. Huber*, 148 Md. App. 190, 205 (2002) (finding that such a standard applies when proving irreparable harm in obtaining an injunction).

Additionally, in *Sekuk,* a Maryland circuit court held that when a shareholder in a derivative lawsuit creates his own delay, he may not allege that harm occurring during the delay he caused constitutes substantive and positive injury. *Sekuk*, 2004 WL 1982508, at *3. In *Sekuk*, the court determined that Plaintiffs created their own substantive and positive injury by waiting more than five weeks to bring suit. *Id.* at *4.

Here, Plaintiff has not pleaded with particularity the substantive and positive injury that would result from a demand or the delay in awaiting a response from a demand. *See Chestnut*, 148 Md. App. Ct. at 205. Plaintiff's broad allegations do not address with particularity the reasons why demand or delay in awaiting response to a demand might cause substantive and positive injury to the company. *See Werbowsky*, 766 A.2d at 620. Claims of financial harm resulting from Defendants' alleged past actions and speculative claims of reputational harm yet to come do not satisfy the pleading requirement of substantive and positive injury caused by a demand or a delay in awaiting response to a demand. *See Werbowsky*, 766 A.2d at 620.

Moreover, Plaintiff cannot meet the first prong of the demand-futility test by listing harms that occurred during delay he caused by waiting four months to file his amended complaint. *See Sekuk*, 2004 WL 1982508 at *3.

Thus, the Court finds that Plaintiff has failed to plead with particularity that a demand would have caused irreparable harm to Huntington, and therefore, has not met the first prong of the demand-futility test under Maryland law.

**B.      Plaintiff Failed to Plead with Particularity that a Majority of the Directors Could Not Reasonably be Expected to Respond to a Demand in Good Faith.**

Having failed to meet the first prong of the demand-futility exception, Plaintiff must alternatively demonstrate, "in a very particular manner" that "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky*, 766 A.2d at 144. The Court finds that Plaintiff has failed to do so.

Plaintiff argues that demand is futile as to the entire Board, based upon allegations that Board members were aware of the danger of acquiring subprime-mortgage debt, that Board members participated in the alleged wrongdoings, that Board members were conflicted or committed due to benefits obtained from Huntington, and that Board members had previously existing relationships with Sky Financial. (Pl's Mot. in Opp. at 12-17).  Defendants counter that in *Werbowsky*, 766 A.2d at 143, the Maryland Court of Appeals rejected Plaintiff's reasoning and that none of Plaintiff's allegations are sufficient to excuse demand. (Defs.' Rep. at 4). Plaintiff sur-replies that *Felker v. Anderson*, No. 04-0372-CV-W-ODS, 2005 WL 602974, at *3 (W.D. Mo. Feb. 11, 2005), in which a Missouri district court applying Maryland law found demand to be

futile, supports his case. (Pl's Sur. at 1). Defendants respond that *Felker* should be rejected as an improper application of Maryland law. (Defs.' Res. at 2).

The Court agrees with Defendants that *Felker* does not save Plaintiff's Complaint. Though *Werbowsky* leaves open the possibility that demand-futility may be established, the particularity of the pleading in *Felker* went beyond that seen in the instant case. *See* Amended Complaint of Plaintiff at ¶ 29, *Felker v. Anderson*, 2004 WL 5502149 (W.D. Mo. Oct. 11, 2004).

In *Felker*, the court held the following allegations sufficient to establish demand-futility under Maryland law: (1) that a majority of directors participated in, approved, or permitted the wrongs alleged; (2) that a majority of the directors had a responsibility and obligation to assure that all press releases and filings of SEC reports were accurate and that oversight procedures were in place; (3) that directors have been forced to sue themselves or other persons with whom they have had business or personal relationships; (4) that the acts complained of constituted violations of state law and fiduciary duties; (5) that the directors' actions had impaired the board's ability to exercise business judgment; (6) that some of the directors are currently defendants in securities class actions arising out of the wrongdoing alleged and stand to lose in those suits if they were to bring suit against themselves; (7) that the company has been and will continue to be exposed to losses; (8) that directors would not bring suit against themselves for fear of exposing their own negligence and misconduct; and (9) that directors' insurance policy likely precluded coverage if the directors initiated a lawsuit against themselves. *Felker*, 2005 WL 602974, at *3.

*Felker*, however, may conflict with the most recent decisions by the Maryland Court of Appeals and other courts interpreting Maryland law. *See e.g. Werbowsky*, 766 A.2d at 145; *Danielewicz v. Arnold*, 769 A.2d 274, 291 (2001) (applying *Werbowsky* to a closely-held

10

corporation); *In re CNL Hotels & Resorts, Inc. Sec. Litigation*, No. 604CV1231ORL31KRS, 604CV1341ORL19JGG, 2005 WL 2219283, at *5 n. 18 (M.D. Fla. Sept. 13, 2005); *Washtenaw County Employees' Ret. Sys's v. Wells Real Estate Investment Trust, Inc.*, 2008 WL 2302679, at *14 (N.D. Ga. Mar. 31, 2008).

In *Hotels & Resorts*, a Florida district court noted that *Felker* was not persuasive for two reasons: (1) it was not clear how to reconcile *Felker* with *Werbowsky's* "clear admonition" that a court should not excuse demand simply because a majority of the directors approved or participated in the challenged transaction; and (2) the court was not able to apply *Felker* because the plaintiffs in *Hotels & Resorts* did not provide any factual support as to how participation in alleged wrongdoings rendered directors unable to respond to a demand in good faith, despite the fact that they had previously worked for a company with whom the defendant corporation still conducted business. *Hotels & Resorts*, 2005 WL 2219283, at *5 n. 18.

Moreover, because *Werbowsky* does not preclude a party from establishing demand futility, the *Felker* decision can be distinguished based upon the uniquely particular pleading seen in that case. *See Werbowsky*, 766 A.2d at 143 (declining to eliminate altogether the futility exception). *Felker* held that demand is excused when a plaintiff pleads with particularity directors' false and misleading statements to the detriment of the corporation. *See* Amended Complaint of Plaintiff at ¶ 29, *Felker v. Anderson*, 2004 WL 5502149 (W.D. Mo Oct. 11, 2004). The *Felker* plaintiffs alleged that defendants did not reveal that their business model was unlawful, that the company actually exaggerated the number of its branches in existence by 120 percent in Nevada, and that the company grossly overstated expansions because none of the company's Texas offices were licensed to do business. *Id.* The court determined that if these facts were proven, plaintiff

would be entitled to relief and waived the demand requirement. *Felker*, 2005 WL 602974, at * 4. Although it remains open that similarly plead facts may satisfy the demand-futility exception under Maryland law, to the extent that *Felker* may conflict with the Maryland Court of Appeals' holding in *Werbowsky*, this Court, like the other courts that have considered *Werbowsky*, finds it to be unpersuasive.[2]

Thus, this Court evaluates Plaintiff's allegations of demand-futility under the standard articulated in *Werbowsky*: his complaint must plead with particularity that "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky*, 766 A.2d at 144.

The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Id*. at 138; *see also* Md. Code Ann. (Corps. & Ass'ns) § 2-405.1(a) & (c). The business judgment rule assumes that directors act properly and in the best interest of the corporation. *Werbowsky*, 766 A.2d at 144. Directors' control over corporate affairs "should not be impinged based on non-specific or speculative allegations of wrongdoing." *Id.* Minority shareholders, "bent simply on mischief," should not be permitted to "file derivative actions not to correct abuse as much to coerce nuisance settlements." *Id.*[3]

---

[2] In *Washtenaw*, a Georgia district court rejected *Felker* because it was the only post-*Werbowsky* case reviewing demand futility under Maryland law to find that demand was futile and because it ignored the Maryland Court of Appeals' findings in *Werbowsky*. *Washtenaw*, 2008 WL 2302679, at *14.

[3] The *Werbowsky* court, in a footnote, explained the problems with even allowing for the possibility of demand-futility in a derivative suit. "The futility exception eliminates any chance at meaningful pre-

12

A director is not conflicted or committed simply because the alleged wrongdoers constitute a majority of the board of directors. *Werbowsky*, 766 A.2d at 130 (overruling *Parish v. Maryland & Virginia Milk Producers Ass'n*, 242 A.2d 512, 545 (1968) (holding that demand is futile when a plaintiff alleges that a majority of directors were themselves involved in the wrongdoing)). "To the extent our holding in [*Parish*] could be read as a ruling that demand futility is established when the pleadings simply allege that a majority of the board participated in the wrongdoing, . . . such a reading was overbroad, as it would make the prerequisite of a demand or pleading demand futility meaningless." *Werbowsky*, 766 A.2d at 130.

A board member is not conflicted or committed simply because he is involved in the offending transaction. *Kamen v. Kemper*, 939 F.2d 458 (7th Cir. 1991*) cert. denied* 502 U.S. 974 (1991) (applying *Kamen*, 500 U.S. at 109).[4]  In *Kamen*, the Seventh Circuit found that the mere fact that directors were paid by the company for their services was not enough to excuse demand under Maryland law as interpreted by the Supreme Court. *See id.* at 460.  If shareholders could make such allegations, "the demand rule would be negated—for almost all directors receive fees, and independent directors come to a board after being slated by corporate insiders." *Id.*  The court also determined that alleging mere involvement to avoid demand does not meet the particularity requirement of Rule 23.1. *Id.*

litigation alternative dispute resolution. It also virtually assures extensive and expensive judicial wrangling over a peripheral issue that may result in preliminary determinations regarding director culpability that, after trial on the merits, turn out to be unsupportable. If a demand is made and refused, that decision, and the basis for it, can be reviewed by a court under the business judgment rule standard." *Werbowsky* 766 A.2d at 144 n. 10.

[4] The Maryland Court of Appeals in *Werbowsky* noted that it agreed with the Seventh Circuit's holding in *Kamen*. *Werbowsky*, 766 A.2d at 143.

Further, general allegations that directors are conflicted or committed to the transaction based on a desire to retain directorships, good relationships with other board members, and good business relationships between the involved corporation and outside corporations with which directors may be affiliated are insufficient. *Werbowsky*, 766 A.2d at 145. In *Werbowsky*, the court determined that the shareholder did not present evidence that the board members' service as members would have caused them to reject a demand. *Id.* at 146.

Rather, a shareholder must make demand on the Board of Directors even if a board member might gain from the transaction through his personal relationships. *Danielewicz*, 769 A.2d at 291. Indeed, the *Danielewicz* court stated that relying upon such relationships to plead demand-futility relies merely upon "conjecture and speculation." *Id.* In *Danielewicz*, the plaintiff sued Board Member A for withholding information from the plaintiff, who had been a majority shareholder of company stock held in future interests at the time of the discrepant transaction. *Id.* at 279. Board Member B was Board Member A's son and a beneficiary of a trust in Board Member A's name that Plaintiff claimed had gained from the transaction. *Id.* at 290. The complaint did not specify how many shares Board Member B was set to gain from the transaction or whether the interests he would hold would allow for present possession of the shares. *Id.* at 292. Moreover, the court found that the shareholder could not rely upon the family relationship to plead demand futility. *Id.* "This Court has certainly seen its share of cases whereby families have literally been torn apart over financial disagreements." *Id.* at 293.

Moreover, a board member is not conflicted or committed simply because the company's insurance coverage will not cover a lawsuit instituted by directors against themselves. *See Werbowsky*, 766 A.2d at 130 (upholding the circuit court's application of a Delaware case to

determine to reject the theory that a lack of insurance coverage for named directors can excuse a demand).

In the instant case, the Board is composed of sixteen directors, and the Court finds that Plaintiff has failed to sufficiently plead that any of these directors is conflicted or committed for the purposes of Maryland's demand-futility analysis. The Court finds that Plaintiff has not indicated with particularity why any Defendants could not reasonably have been expected to respond to a demand in good faith and within the ambit of the business judgment rule. *See Werbowsky*, 766 A.2d at 144.

### 1. Defendant Hoaglin

Hoaglin served as Huntington's CEO and Chairman of the Board. (Pl.'s Memo. in Opp. at 13). Plaintiff alleges that in 2005, the SEC filed suit against Huntington and Hoaglin, alleging financial reporting fraud in connection with financial statements filed for fiscal years 2001 and 2002 and that Hoaglin has "a propensity to use sham accounting practices." (Pl.'s Memo. in Opp. at 13). Plaintiff further alleges that Hoaglin "simply lied to the investing public" in casting the Sky Financial acquisition in a positive light. *Id.* Plaintiff also generally alleges that Hoaglin "actively participated in the negotiations and due diligence review that led to the Sky Financial Acquisition" and that he "attended several of the Board's Market Risk subcommittee meetings wherein he was put on notice of the collapsing subprime market." (Compl. ¶18). Furthermore, Plaintiff alleges that Hoaglin would not review a demand in good faith "because his employment with Huntington is his principal professional occupation, pursuant to which he received and continues to receive substantial compensation and other benefits." (Pl.'s Memo. in Opp. at 12). Finally, Plaintiff alleges that Hoaglin breached his fiduciary duties by lying to the public, for example, by stating on

December 20, 2006 that "the Company expected that the transaction would be immediately accretive to 2007 earnings."

Defendant counters that Plaintiff cites no case holding that his attacks on Defendant Hoaglin's conduct and character have any bearing on demand-futility analysis under Maryland law. (Defs.' Rep. at 7). The Court agrees.

Plaintiff fails to plead with particularity the reasons why the facts he alleges make Hoaglin unable to respond to a demand within the ambit of the business judgment rule. *See Werbowsky*, 766 A.2d at 144. Plaintiff does not allege that any matter from the SEC litigation remains unresolved. (Compl. ¶ 58). Additionally, such allegations do not plead with particularity that Hoaglin ever acted outside of business judgment in the situation now before the Court, and therefore, the Court cannot find that demand is futile upon Hoaglin because he is plainly guilty of the wrongs alleged. *See Davis*, 17 A. at 264–265. Plaintiff's general allegations that Hoaglin has breached his fiduciary duties are precluded by *Werbowsky*. 766 A.2d at 130 (stating that the demand-futility analysis is not decided on the merits of the case).[5] Thus, the Court finds that Plaintiff's allegations do not establish that Hoaglin is conflicted or committed for the purposes of Maryland's demand-futility analysis.

**2.      Defendant Kimble**

---

[5] Moreover, Hoaglin's statement about the company's expectations in 2006 would probably not be considered a breach of his fiduciary duties under the business judgment rule. *See Werbowsky*, 766 A.2d at 144.

Plaintiff has failed to plead with particularity why Kimble, who served as Huntington's Chief Financial Officer, Finance Director, Executive Vice President, and Controller, could not reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule. *See Werbowsky*, 766 A.2d at 144.

Plaintiff alleges that Kimble participated in the due diligence that lead to the acquisition of Sky Financial and that he attended meetings wherein "he unquestionably learned of the collapsing subprime market and risk exposure to Huntington." (Compl. ¶19). Plaintiff also claims that Kimble publicly made incorrect predictions about the success of the acquisition. (Compl. ¶ 86). These allegations are precluded by *Werbowsky*. 766 A.2d at 130.

Thus, the Court finds that Plaintiff has not established that Kimble is conflicted or committed for the purposes of Maryland's demand-futility analysis.

### 3.    Defendant Adams

Plaintiff has failed to plead with particularity why Adams, who served as Huntington's President, Chief Operating Officer, and a member of the Board until December 2007, could not reasonably have been expected to respond to a demand in good faith and within the ambit of the business judgment rule. *See Werbowksy*, 766 A.2d at 144. Plaintiff alleges that prior to the acquisition, Adams served as CEO and Chairman of the Board of Sky Financial and thus had "intimate knowledge of Sky Financial's relationship with Franklin." (Compl. ¶20). Furthermore, Plaintiff claims that "Adams had a material and financial interest in the completion of the Sky Financial acquisition because as part of the acquisition, Huntington entered into a "very lucrative" employment contract with Adams. *Id.*

Under *Werbowsky*, knowledge of the alleged wrongdoings and employment within the company do not establish demand-futility. 766 A.2d at 130. Thus, the Court finds that Plaintiff has failed to establish that Adams is conflicted or committed for the purposes of Maryland's demand-futility analysis.

### 4. Members of the Company's Audit Committee

Plaintiff has failed to plead with particularity why Defendants Lauer, Little, Mastroianni, and Porteous, in their positions as members of Huntington's Audit Committee, could not reasonably have been expected to respond to a demand in good faith and within the ambit of the business-judgment rule. *See Werbowsky*, 766 A.2d at 144.

Plaintiff alleges that these Defendants, as members of the Company's Audit Committee, knew that "the Company's auditors were brought in for special valuations of the Company's subprime securities since the Company could not adequately value or evaluate these high-risk securities." (Pl.'s Memo. in Opp. at 13-14). Plaintiff alleges that because of this knowledge, "the Audit Committee members caused or allowed the Company to issue false or misleading press releases regarding Huntington's financial statements, thus allowing the Company's value to be artificially inflated." *Id.* at 14.

These allegations do not establish that the Audit Committee members were unable to respond to a demand within the ambit of the business-judgment rule. *See Werbowsky*, 766 A.2d at 144. Furthermore, neither membership in a committee nor knowledge of alleged wrongdoings establishes demand futility. *Id.* at 130. Thus, the Court finds that Defendants Lauer, Little, Mastroianni, and Porteous, in their capacities as members of the Audit Committee, are not conflicted or committed for the purposes of Maryland's demand-futility analysis.

### 5. Former Member of the Board of Sky Financial

Plaintiff has failed to plead with particularity why Defendants Fennell, Hilliker, Levy, and Mastroianni, in their positions of former Sky Financial board members, could not reasonably have been expected to respond to a demand in good faith and within the ambit of the business judgment rule. *See Werbowsky*, 766 A.2d at 144.

Plaintiff alleges that at the time of the acquisition, the former Sky Financial board members were aware of the debt carried by Franklin and that these Defendants failed to provide Huntington shareholders with this information. (Pl.'s Memo. in Opp. at 14).

These allegations fail to plead with any particularity why these Defendants could not have considered a demand in good faith. *See Werbowsky*, 766 A.2d at 144. Moreover, the fact that a director has a preexisting relationship that might render him conflicted does not per se excuse demand. *Danielewicz*, 769 A.2d at 291. Thus, the Court finds that Defendants Fennell, Hilliker, Levy, and Mastroianni, in their capacities as former Sky Financial board members, are not conflicted or committed for the purposes of Maryland's demand-futility analysis.

### 6. Members of the Company's Risk Committee

Plaintiff has failed to plead with particularity why Defendants Biggs, Endres, Levy, Ransier, and Little, in their positions as members of the Company's Risk Committee, could not reasonably have been expected to respond to a demand in good faith and within the ambit of the business judgment rule. *See Werbowsky*, 766 A.2d at 144.

Plaintiff alleges that the Risk Committee members failed to properly realize the magnitude of Franklin's relationship with the Sky Financial deal. (Pl.'s Memo. in Opp. at 15). This allegation fails to plead with any particularity why these Defendants could not have considered a demand in

good faith. *See Werbowsky*, 766 A.2d at 144. Thus, the Court finds that Defendants Biggs, Endres, Levy, Ransier, and Little, in their positions as members of the Company's Risk Committee, are not conflicted or committed for the purposes of Maryland's demand-futility analysis.

### 7. Defendants who Received Substantial Compensation

Plaintiff argues that because Defendants Endres, Ransier, and Biggs received substantial monetary compensation and other benefits from Huntington, they are conflicted or committed for the purposes of demand-futility analysis. (Pl.'s Mot. in Opp. at 16).

*Werbowsky* precludes arguments that Defendants who received substantial monetary compensation and other benefits from Huntington are conflicted or committed for purposes of Maryland's demand-futility analysis. 766 A.2d at 143 (stating that the Maryland Court of Appeals would not excuse demand because directors are paid well for their services). Thus, the Court finds that Defendants Endres, Ransier, and Biggs are not conflicted or committed simply because of the monetary compensation they receive from Huntington.

### 8. Defendants Casto, Gerlach and Lhota

Finally, Plaintiff has also failed to plead with particularity why Defendants Casto, Gerlach, and Lhota are unable to respond to a demand in good faith or within the ambit of the business-judgment rule. *See Werbowsky*, 766 A.2d at 144. Plaintiff alleges only that these board members belonged to various committees. (Compl. ¶¶ 25-27).

Mere membership on the Board or in a committee is insufficient to establish commitment or conflict of interest. *Id.* Thus, the Court finds that Defendants Casto, Gerlach, and Lhota are not conflicted or committed for the purposes of Maryland's demand-futility analysis.

In sum, because Plaintiff fails to establish that a single member of the Board is conflicted or committed for the purposes of establishing demand futility, the Court finds that Plaintiff has failed to satisfy the second prong of the demand-futility exception, requiring him to plead with particularity that a majority of the directors could not make a good-faith consideration of a demand. *See Werbowsky*, 766 A.2d at 144.

### III.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to meet the pleading requirements of Rule 23.1 as interpreted by courts applying Maryland law.  Defendants' arguments for dismissal are therefore well-taken. The Court **DISMISSES** Plaintiff's case against Defendants. Final judgment shall be rendered in favor of Defendants, Thomas E. Hoaglin, *et. al.*, and against Plaintiff, Russell E. Caston.

The Clerk shall remove this case from the Court's pending cases list.

The Clerk shall remove Document 54 from the Court's pending motions list.

**IT IS SO ORDERED.**


  **/s/ George C. Smith**
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**